## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EMMANUEL BAPTIST CHURCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. CIV-11-594-D |
| | ) | |
| STATE FARM FIRE AND CASUALTY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant's motion to strike Jim Kotter as an expert witness [Doc. No. 65]. Plaintiff responded to the motion, and Defendant filed a reply. Defendant argues Mr. Kotter's proffered opinion cannot satisfy the requirements for admissible expert testimony pursuant to Fed. R. Evid. 702 and *Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

Background:

This action arises from Plaintiff's insurance claim based on damage incurred in a May, 2010 storm. It contends that Defendant, its insurer, breached the insurance contract by failing to provide the full restoration cost for damage caused by the storm. Defendant does not dispute that coverage is available for damage caused by the storm, but it contends Plaintiff seeks an amount exceeding the reasonable cost of restoring the property. Defendant has estimated the cost of restoration to be $114,036.81, while Plaintiff, based on Mr. Kotter's estimate, contends the cost is $310,101.93.[1] The parties agree that some of the necessary work, including roof replacement, has been completed to Plaintiff's satisfaction. However, it is not disputed that additional work remains to be completed.

---

[1]The parties' subsequent submissions suggest they have increased their respective estimates. *See, e.g.,* Plaintiff's motion to appoint umpire [Doc. 71], stating Plaintiff's estimated cost is $337,023.93, while Defendant's estimate is $164,397.53.

The only dispute remaining in this case is the reasonable cost of completing the necessary additional work.[2]

Defendant moves to exclude Mr. Kotter's testimony on the grounds that his expert report shows he used a flawed methodology in calculating the restoration cost.  Defendant notes that the report shows that, to calculate the costs, Mr. Kotter utilized a computer software program known as "Xactimate."  Defendant does not dispute the propriety of utilizing that program, which it agrees is typically used by construction contractors to estimate costs.  However,  as more specifically set out below, Defendant contends Mr. Kotter erred in applying Xactimate, resulting in the duplication of certain costs and the erroneous calculation of interest. Defendant also contends that Mr. Kotter added other unnecessary costs.

In response to the motion, Plaintiff first argues the motion must be denied as untimely, as the Scheduling Order required the filing of *Daubert* motions by January 5, 2012, and Defendant's motion was not filed until September 17, 2012.   Plaintiff's argument is without merit because Plaintiff did not timely designate its expert witnesses on the December 2, 2011 deadline set out in the Scheduling Order, and Defendant obviously could not file a *Daubert* motion when no expert witness had been identified.   In fact, Plaintiff did not attempt to disclose expert witnesses until May 8, 2012, more than five months after the deadline expired, when it asked the Court to permit it to designate expert witnesses beyond the scheduled deadline for doing so.   As set out in the Court's Order [Doc. No. 62] ruling on Plaintiff's motion to designate expert witnesses out of time, the Court authorized the designation of one expert witness, Mr. Kotter.  In the Order, the Court further

---

[2]Initially, Plaintiff also alleged that Defendant had breached its duty of good faith and fair dealing, but the Court granted Defendant's summary judgment motion on that claim in its Order of August 21, 2012 [Doc. No. 61].  The Order also granted Defendant's summary judgment motion on Plaintiff's separate cause of action asserting  breach of the insurance contract based on damages to another structure owned by Plaintiff and insured by Defendant.

expressly granted Defendant leave to file a *Daubert* motion no later than 21 days from the date of the Order.  *See* Order [Doc. No. 62] at p. 5.  Defendant's current motion was timely filed within that deadline.  Plaintiff's argument to the contrary is clearly without merit, and should not have been asserted.

Plaintiff's only other argument in response to the *Daubert* motion is its contention that Defendant is not challenging the admissibility of Mr. Kotter's expert opinion.  It contends that Defendant's argument simply focuses on the fact that the parties' respective expert witnesses disagree regarding the costs of restoring Plaintiff's structure.

Having reviewed the parties' briefs, the Court concludes that a hearing is not required to rule on the motion.  Accordingly, the Court determines the matter based on the record before it. [3]

Standard of review:

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if the following requirements are satisfied:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid. 702.  *Daubert* interprets the Rule as requiring the trial court to perform a "gatekeeping"

---

[3] A formal hearing is not required to adjudicate a *Daubert* motion, and the Court has considerable latitude in deciding whether to hold a formal hearing. *Burlington Northern and Santa Fe Ry. Co. v. Grant,* 505 F.3d 1013, 1031 (10th Cir. 2007); *United States v. Charley*, 189 F.3d 1251, 1266 (10th Cir.1999). The Court need not conduct a hearing if there is sufficient evidence in the record to determine whether the proposed testimony is relevant and reliable. *Daubert*, 509 U.S. at 597; *Goebel v. Denver and Rio Grande Western Railroad Co.*, 346 F.3d 987 (10th Cir. 2003).

function to determine whether proposed expert witness testimony is admissible, and it requires that, to be admissible, the testimony or evidence must be based on "scientific" knowledge, which is defined as that which is grounded in the methods and procedures of science or "derived by the scientific method." *Daubert*, 509 U.S. at 590.

Although *Daubert* sets out specific factors to be considered by the Court in assessing the admissibility of scientific expert opinion, where the testimony is not purely scientific, the *Daubert* factors should be considered only to the extent they are relevant to the subject of the testimony. *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). When assessing an expert opinion that is not purely scientific, the Court has discretion to determine their applicability, and the Court applies a flexible analysis based on the issues addressed by the proposed opinion. *Kumho*, 526 U.S. at 149, 152.

"[T]he central objective of the district court in any *Daubert* inquiry is and must be to ensure that any expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Graves v. Mazda Motor Corp.*, 405 F. App'x 296, 298 (10th Cir. 2010) (unpublished opinion) (quoting *Kumho Tire*, 526 U.S. at 141–42, 152). "Thus, to discharge its *Daubert* gatekeeping responsibility, the district court must take enough steps to confirm that it has 'assess[ed] the reasoning and methodology underlying the expert's opinion.'" *Id.* at 299 (quoting *Milne v. USA Cycling, Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009)).

Application:

In assessing the admissibility of expert testimony, the Court should initially determine if the witness is "qualified by knowledge, skill, experience, training, or education" to offer the proffered opinion. *United States v. Orr,* 645 F.3d 1079, 1091 (10th Cir. 2012). In this case, Defendant does

4

not expressly challenge Mr. Kotter's qualifications to offer an expert opinion regarding the costs of restoring Plaintiff's property. As a result, the Court need not make "detailed findings" regarding his qualifications, as it need not address in detail *Daubert* factors which are not challenged. *See, e.g., United States v. Avitia-Guillen*, 680 F.3d 1253, 1257 (10th Cir. 2012). The Court must, however, determine whether he is qualified to offer the proffered opinion.

Mr. Kotter's *curriculum vitae*, included with his expert report submitted as Defendant's Exhibit 1, reflects he has experience as an insurance adjuster and has been employed in that capacity since approximately 1999. Prior to that time, he was engaged in commercial and residential construction, and was an owner or partner in several firms. He holds insurance adjuster licenses in Louisiana, Texas, and California, and was previously licensed in Oklahoma.[4] He is currently pursuing additional certifications in property casualty underwriting through the Insurance Institute of America.

The scope of Mr. Kotter's expert testimony in this case is limited to the calculation of the costs required to restore the damaged property insured by Defendant. His experience as an adjuster and in the construction business renders him qualified to opine on such topics. Accordingly, the Court finds he is qualified to offer expert opinion on this specific topic.

The Court also finds that Mr. Kotter's testimony, as well as that of Defendant's expert witness, is relevant to the issue of the amount of reasonable costs required to restore the property. Testimony of individuals having expertise in the restoration of insured properties and the associated costs will be helpful to the jury. Determining the costs associated with the restoration of damaged property pursuant to an insurance policy is a subject beyond the general knowledge of jurors, and

---

[4]Mr. Kotter's *curriculum vitae* also states he is a licensed adjuster in Oklahoma, but Defendant presents evidence to show that his license here expired in 2007. Defendant's Ex. 3. Plaintiff does not respond to this evidence.

the Court finds expert testimony will assist them in discharging their duty as jurors.

With respect to the remaining *Daubert* factors, Defendant's motion focuses on the reliability of Mr. Kotter's testimony.   In this regard, the Court must determine if his opinion is based on "valid reasoning and reliable methodology" before admitting the testimony.   *Dodge v. Cotter Corp.,* 328 F.3d 1212, 1223 (10th Cir. 2003).   Expert testimony which fails to satisfy that requirement is not admissible.

Defendant notes that, in calculating his estimate of the restoration costs, Mr. Kotter used a computer software program called Xactimate, which Defendant describes as a computer program commonly used by insurance adjusters to calculate costs.   Defendant does not object to the use of Xactimate as the methodology for calculating costs, and notes that its own expert witness, Mike Berryman, used Xactimate to calculate his estimate.   Furthermore, courts have found that Xactimate satisfies the *Daubert* requirement that the proposed expert utilize a sound methodology.   *See, e.g., Denley v. Hartford Insurance Company,* 2008 WL 2951926, at *4 (E.D. La. July 29, 2008) (unpublished opinion) ("This tool is widely recognized and used in the insurance industry to estimate damage," and "[u]sing the Xactimate as an estimate tool, this methodology meets the soundness criteria.").[5]

Defendant contends that Mr. Kotter erred in his application of Xactimate because he included, as separate categories of cost, items which the Xactimate software incorporates in other categories, thereby resulting in duplication and a total estimate exceeding that which would result from the proper application of Xactimate.   Specifically, Defendant contends that Mr. Kotter's

---

[5]In fact, courts have noted that Defendant typically uses Xactimate to estimate repair costs. *See, e.g., Rybinski v. State Farm Fire and Casualty Co.,* 2012 WL 289913 (W.D. Ky. Jan. 31, 2012) (unpublished opinion); *Wickman v. State Farm Fire & Casualty Co.*, 616 F. Supp. 2d 909 (E.D. Wis. 2009).

estimate reflects that, in addition to including an item for removal of the damaged roof, he calculated a cost of $2,322.00 for the loading and hauling of the debris.  However, Defendant argues the Xactimate software for roof removal includes within that item the cost of loading and hauling off the debris.  As a result, Defendant contends, Mr. Kotter's estimate exceeds that which would result from the correct application of Xactimate.

Defendant also challenges the accuracy of Mr. Kotter's estimate because he included a cost of $35,987.20 for "commercial supervision" of the repair work, based on 40 hours per week for 16 weeks.  Defendant challenges Mr. Kotter's "methodology for determining that commercial supervision would be required."  Motion at p. 3.  It contends the cost of any necessary supervision is generally not added as a separate charge but is included in the category of the general contractor's overhead costs, which Mr. Kotter separately estimates at $25,628.26.  According to Defendant, the work which has been completed on Plaintiff's property has not generated a charge for "commercial supervision," and the $35,987.20 cost estimated by Mr. Kotter is unnecessary and excessive.

Defendant further challenges the charges calculated by Mr. Kotter for a "temporary construction office," ongoing construction cleanup, temporary power and water, and a temporary toilet.  Defendant contends these charges are unnecessary.  Furthermore, Defendant notes that Mr. Kotter calculated the charge for a building permit from the City of Oklahoma City, which Defendant contends is not required for the type of work to be performed.

Finally, Defendant contends Mr. Kotter incorrectly calculated overhead and profit charges because he compounded these figures, a procedure which is not the standard in the industry. According to Defendant, its expert witness will testify that the standard practice is to apply overhead and profit "in a non-compound method."  *See* Expert Report of Mike Berryman, Defendant's Ex.

2.

Defendant contends that the foregoing errors render Mr. Kotter's methodology unsound and unreliable. Accordingly, it argues his testimony must not be admitted as proper expert testimony.

In applying the *Daubert* requirement that an expert's methodology be reliable, courts "must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." *Amorgianos v. National Railroad Passenger Corp.,* 303 F.3d 256, 266 (2d Cir. 2002) (citing *Daubert*, 509 U.S. at 595). "Thus, when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Id.*

In contrast, however, where an expert applies a sound methodology but commits errors or relies on incomplete information in reaching his conclusions, "[s]uch deficiencies impact the weight of the expert's testimony rather than its admissibility." *Smith v.* BNSF *Ry. Co.,* 2011 WL 7053631, at *7 (W.D. Okla. Sept. 14, 2011) (unpublished opinion) (citing *Daubert*, 509 U.S. at 596); *see also Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004). In such cases, the testimony is admissible if the "inadequacies are known to the defendant in order to thoroughly cross-examine the witness." *Hertz Corporation v. Gaddis–Walker Electric., Inc.*, 1997 WL 606800, at *4 (10th Cir. Oct. 2, 1997) (unpublished opinion) (citing *Firestone Tire & Rubber Co. v. Pearson*, 769 F.2d 1471, 1482–83 (10th Cir.1985)). Thus, "the burden is on opposing counsel through cross-examination to explore and expose any weaknesses in the underpinnings of the expert's opinion." *Robinson v. Missouri Pacific R.R. Co.,* 16 F.3d 1083, 1090 (10th Cir.1994). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and

8

appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

In responding to Defendant's motion, Plaintiff fails to address the issue regarding Mr. Kotter's alleged errors in utilizing the Xactimate tool to calculate his estimate of costs. Plaintiff does not explain Mr. Kotter's justification for categorizing costs in the manner he apparently used, and does not dispute Defendant's explanation of the manner in which Xactimate categorizes costs. Instead, Plaintiff argues that the discrepancies in the respective calculations of Mr. Kotter and Defendant's expert witness, Mr. Berryman, are factual issues.

Although Defendant characterizes its challenges to the propriety of Mr. Kotter's calculations as demonstrating an unreliable methodology, the Court concludes that the challenges are best described as directed at alleged errors in his use of Xactimate, which Defendant agrees is a recognized methodology for calculation of restoration costs. The errors and deficiencies cited by Defendant impact the weight of Mr. Kotter's testimony rather than its admissibility. While the Court is concerned that Plaintiff has failed to attempt to justify the manner in which Mr. Kotter applied Xactimate and has offered no argument in that regard, that issue will be addressed at trial. Defendant will, of course, have the opportunity to cross-examine Mr. Kotter on these topics, and he will be required to explain his application. Defendant's expert witness has opined regarding the alleged errors in Mr. Kotter's calculation, and the respective weight of their opinions will be a question for the jury. Although Defendant notes that Plaintiff would not agree to Mr. Kotter's deposition, the Court finds the record shows that Defendant and its expert witness are prepared to respond to Mr. Kotter's testimony.[6]

---

[6]In this regard, the Court notes with concern that Plaintiff incorrectly argues Defendant did not seek to depose Mr. Kotter until after the expiration of the discovery deadline. The record reflects that Plaintiff is wrong, as Defendant submits a November 9, 2011 letter to Plaintiff's counsel requesting several depositions, including that of Mr. Kotter. *See* Defendant's reply [Doc. No. 68] Ex. 1. At that time, Mr. Kotter was listed as a fact witness and had not been designated

Conclusion:

For the foregoing reasons, the Court concludes that Defendant's motion to strike the expert testimony of Jim Kotter [Doc. No. 65] must be, and is hereby, denied.

IT IS SO ORDERED this 6th day of December, 2012.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

an expert.  Nonetheless, he was among the individuals Defendant sought to depose prior to the discovery deadline.